**FILE COPY**

JUDGE STEIN

Erach F. Screwvala (ES-3317)
Robert A. Schachter (RS-7163)
Rachel Song (RS-8237)
Robinson Brog Leinwand Greene Genovese & Gluck, P.C.
1345 Avenue of the Americas
New York, New York 10105-0143
212-603-6300
Attorneys for Plaintiff

**08 CIV 3713**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESUS HOMERO SILVA SALAZAR,

                                    Plaintiff,

        - against –

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

                                    Defendant.



COMPLAINT
WITH JURY DEMAND

        Plaintiff Jesus Homero Silva Salazar ("Salazar") by and through his

attorneys Robinson Brog Leinwand Greene Genovese and Gluck, P.C., for his

complaint against defendant National Union Fire Insurance Company of

Pittsburgh, PA. ("National Union"), alleges as follows:

## NATURE OF THE ACTION

        1.        This is an action for breach of contract, bad faith, and for a

declaratory judgment arising out of defendant's intentional and unlawful refusal

to honor its obligations under a policy of insurance sold to plaintiff at a

substantial premium.  As detailed fully herein, plaintiff was the victim of an act of

kidnapping and personal extortion in which plaintiff was subjected to repeated

and brutal beatings, and suffered emotional distress as a result of threats made against his life and the lives of his family.  Despite having procured Crisis Coverage Insurance from defendant to protect against this precise peril, defendant has intentionally and deliberately failed to provide coverage under the policy.  Furthermore, defendant has refused to abide by the policy's mandate requiring a prompt determination of coverage in a callous, calculated and wanton attempt to force plaintiff to seek the assistance of the Court to redress his contractual rights.

### PARTIES

2.    Plaintiff resides at Avenida Fundadores # 700-12, Fracc: Privanzas Fundadores, San Pedro, Garza Garcia, Nuevo Leon, Mexico, C.P. 66269.  He is in the business of, inter alia, providing shipping services for merchandise between the United States and Mexico.

3.    Defendant is a capital stock company with offices at 2704 Commerce Drive, Suite B, Harrisburg, Pennsylvania.  Defendant is in the business of, inter alia, marketing and selling a variety of insurance products throughout the United States.  Defendant has offices and transacts business in the State of New York.

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over the action pursuant to section 1332(a)(2) of Title 28 of the United States Code which provides for original jurisdiction of all civil actions where the matter in controversy exceeds $75,000

exclusive of interest and costs and the action is between citizens of a State and citizens or subjects of a foreign State. Here, plaintiff seeks in excess of $1 million in damages and the parties are citizens of a State and a foreign State in that plaintiff is a citizen of the Republic of Mexico and defendant is a citizen of Pennsylvania.

     5.     Venue in this district is proper pursuant to section 1391(a)(1) of Title 28 of the United States Code, which provides for venue in any judicial district where defendant resides. Defendant is a resident of the State of New York. In addition, the parties have agreed by contract that all claims and disputes are to be brought in this district.

## BACKGROUND FACTS

     6.     Plaintiff is engaged in the business of, _inter alia_, providing shipping services for merchandise between the United States and Mexico. In the course of his business, plaintiff is required to make frequent trips from Mexico to the United States.

     7.     Defendant is an insurance company in the business of, _inter alia_, marketing and selling insurance products throughout the United States. Among the insurance products marketed and offered by defendant is "Crisis Coverage Insurance." In general terms, Crisis Coverage Insurance is designed to provide insurance against acts of kidnapping, extortion, and ransom demands.

8.     Plaintiff sought to purchase coverage against kidnapping and extortion. To that end, plaintiff approached Inscorp, Inc. ("Inscorp"), an insurance agent, about acquiring such coverage.

9.     Representatives of Inscorp provided plaintiff with an application form which plaintiff completed and signed. The application form bore the title, "Kidnap/Ransom Insurance Application."

10.    Based upon the application completed by plaintiff, on September 12, 2005, AIG WorldSource, a division of American International Companies, provided Inscorp with a quotation for what it described as "WorldSource Kidnap & Ransom/Extortion Policy."

11.    On or about September 30, 2005, National Union issued policy number 647-1553. (the "1553 Policy"). Plaintiff did not present any claim under the 1553 Policy.

12.    At or around the time of inception of the 1553 Policy, defendant arranged for plaintiff to meet with representatives of Clayton Consultants, Inc., ("Clayton"), a security firm on retainer with defendant to provide assistance in kidnapping and extortion events.

13.    Prior to the termination of the 1553 Policy, plaintiff indicated a desire to renew the policy for an additional year. Consequently, defendant forwarded to plaintiff a document entitled "No Known Losses and No Changes in Application Statement by Named Insured" which plaintiff completed and returned to defendant.

14.    On September 27, 2006, defendant bound the renewal of the 1553 Policy for an additional year commencing September 30, 2006 and terminating September 30, 2007.

15.    Subsequent to the binder, defendant issued policy number 647-1777 (the "1777 Policy"). The 1777 policy is entitled "Crisis Coverage Insurance." A copy of the 1777 Policy is attached as Exhibit 1.

16.    On or about June 26, 2007, one of plaintiff's trucks was transporting merchandise within Mexico for delivery in Mexico. Plaintiff received a telephone call from one of his employees who stated that the truck he was driving had been detained by law enforcement officers and that his presence was requested. Plaintiff stated to his employee that he was on his way.

17.    Plaintiff arrived at the location provided by his employee later that same day. However, upon arrival, the truck was not there as he expected. Rather, plaintiff was approached by a group of men who forced him into a vehicle and left the scene, arriving at a house in an unknown location.

18.    Upon arrival at the unknown location, plaintiff was blindfolded with duct tape, handcuffed, and wrapped in a blanket. In addition, his identification and all personal belongings were taken from him. Plaintiff was also repeatedly and severely beaten.

19.    The following day, June 27, 2007, plaintiff was brought before an individual who identified himself as a leader of the powerful Los Zetas drug cartel. The individual revealed intimate personal knowledge of plaintiff and,

more particularly, his family, including their location. The kidnappers initially demanded a ransom payment of $2 million to secure his safety and the safety of his family. Plaintiff successfully "negotiated" the ransom payment down to $1 million. This "negotiation" took place with a pistol at plaintiff's head. Upon conclusion of these "negotiations," the kidnappers once again severely and brutally beat plaintiff.

20.    To facilitate the ransom payment, plaintiff was released from captivity. At first, the kidnappers insisted that his release be secured by his son, but plaintiff vehemently resisted this demand. Instead, the kidnappers retained his employees as further security for plaintiff's return with the ransom payments.

21.    In accordance with the terms of the 1777 Policy, plaintiff put defendant on notice of the occurrence, which defendant acknowledged by correspondence from its claim manager American International Underwriters ("AIU") on June 29, 2007. Defendant retained Clayton to provide services to plaintiff and assist in making the ransom payment to the kidnappers.

22.    With the assistance of Clayton, plaintiff made the $1 million ransom payment in two installments. The first, in the amount of $500,000.00 was made by plaintiff on or about July 5, 2007. Plaintiff was detained and severely beaten by the kidnappers after the first ransom payment and released to secure the balance of the ransom. The second payment was made on or about July 10, 2007.

23.    In addition to immediately notifying defendant of the kidnapping occurrence, plaintiff placed defendant on notice of the facts and circumstances supporting the claim in letters dated July 4, 6, and 19, 2007.

24.    On July 25, 2007, AIU wrote to plaintiff and outlined defendant's preliminary position with respect to coverage, in which it stated that "it is not clear that this matter is a covered kidnapping under this policy." Defendant, however, did not specifically decline to cover the loss submitted by plaintiff.

25.    On August 7, 2007, AIU wrote again to plaintiff. As with its prior correspondence, defendant did not specifically decline to cover the ransom payment made by plaintiff. Rather, AIU stated that defendant's "review of the facts surrounding this matter . . . is continuing."

26.    AIU wrote to plaintiff a third time on October 11, 2007, over three months after plaintiff was kidnapped. As with its prior letters, defendant continued to refuse to take a position on coverage, averring that it was still "reviewing the facts and statements" that it acknowledged in its August 7 letter.

27.    As of this date, defendant has failed to pay plaintiff's claim for coverage under the 1777 policy and has further failed to disclaim coverage of the kidnapping claim made by plaintiff nearly one year ago.

## COUNT I
### (for Declaratory Judgment)

28.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29.    Plaintiff purchased the 1777 policy for valuable consideration.

30.    The 1777 Policy defines kidnapping as "any event or connected series of events of seizing, detaining or carrying away by force or fraud, of one or more insured person(s)...for the purpose of demanding Ransom Monies."

31.    Plaintiff is an insured person as defined in the 1777 Policy.

32.    The 1777 Policy defines Ransom Monies as monies "paid by [plaintiff] resulting directly from a kidnapping or extortion occurring during the Policy Period."

33.    The 1777 Policy defines Extortion as "personal extortion" and defines "personal extortion" as "any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to [plaintiff] to . . . kill, physically injure or kidnap an insured person."

34.    On June 26, 2007, plaintiff was kidnapped by members of the Los Zetas drug cartel within the meaning of the 1777 Policy.

35.    On July 5, 2007 and July 10, 2007, plaintiff paid a total of $1 million in Ransom Monies as that term is defined in the 1777 Policy with the aid and assistance of defendant's consultant.

36.    On or about June 26, 2007, plaintiff was kidnapped and became a victim of personal extortion as defined by the 1777 Policy when he was forced to pay $1 million in Ransom Monies following a threat by his kidnappers to his life and the lives of plaintiff's family.

37.    An actual controversy now exists between the parties with regard to whether the plaintiff is entitled to indemnity under the 1777 Policy's provisions providing coverage for Kidnapping and/or Personal Extortion.

38.    The plaintiff is entitled to a declaration by the Court that plaintiff suffered a covered loss under the 1777 policy for which defendant is obligated to indemnify plaintiff.

## COUNT II
### (For Breach of Contract)

39.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.    The 1777 Policy requires defendant to comply with a strict procedure in handling a claim made by plaintiff.

41.    Specifically, the 1777 Policy requires defendant "within 15 days after we receive written notice of claim" to:

a) acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

b) begin any investigation of the claim; and

c) request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim, such additional information is necessary.

42.    Defendant acknowledged receipt of plaintiff's claim on June 29, 2007.

43. Defendant has not provided plaintiff with sworn proof of loss forms and has never asked plaintiff to complete a sworn proof of loss. By virtue of the foregoing, defendant has waived the requirement that plaintiff provide a sworn proof of loss.

44. The 1777 Policy also requires defendant, within fifteen (15) days of receipt of the sworn proof of loss to "notify [plaintiff] in writing as to whether:

    a) the claim or part of the claim will be paid;
    b) the claim or part of the claim has been denied, and inform you of the reasons for denial;
    c) more information is necessary; or
    d) we need additional time to reach a decision, if we need additional time, we will inform you of the reasons for such need.

45. More than fifteen days have elapsed since the June 29, 2007 letter acknowledging receipt of plaintiff's claim.

46. Contrary to the express terms of the 1777 Policy, defendant has failed to state in writing (1) whether the claim or any part thereof will be paid; or (2) whether the claim or any part of the claim has been denied and the reasons for such denial; or (3) that more information was necessary; or (4) that additional time was needed to reach a decision and the reasons therefor.

47. By failing to provide plaintiff a determination on coverage within the time period required by the 1777 Policy, defendant has breached the 1777 Policy and is estopped from asserting any basis to deny the claim.

48.    By virtue of the foregoing, plaintiff has been damaged in an amount in excess of $1 million.

### COUNT III
### (For Bad Faith)

49.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.    Despite the clear terms of the 1777 Policy, defendant has failed to respond to plaintiff's claim in a timely fashion.

51.    In successive letters, defendant has claimed to be "investigating" plaintiff's claim.  Upon information and belief, defendant has failed to undertake any substantial investigation of plaintiff's claim.  Pointedly, defendant has failed to request that defendant provide a sworn proof of loss.

52.    In contrast to defendant's dilatory action, plaintiff has, on numerous occasions, provided detailed information regarding his claim, provided the relevant policy language supporting the claim, and repeatedly demanded that defendant honor its obligations under the 1777 Policy to cover his claim.  Indeeed, defendant's own consultant, Clayton, was involved in securing the release of defendant's employees and payment of the ransom.

53.    Without any justification, defendant has willfully and unlawfully refused to make any determination concerning coverage under the 1777 Policy.  Defendant's failure to conclude its investigation of the claim as a guise for non-payment, upon information and belief, was calculated to force plaintiff to incur substantial expense in bringing this action.

54.     In failing to comply with the express terms of the 1777 Policy requiring a decision on coverage in a specified period of time, in intentionally failing to conclude its investigation of the claim, in refusing to make a coverage determination despite repeated requests to do so, and in forcing defendant to seek legal redress to enforce his rights under the 1777 Policy, defendant has acted in conscious disregard of its obligations under the 1777 Policy.

55.     By virtue of the foregoing, plaintiff has suffered and will continue to suffer significant losses, including but not limited to expenses related to the Ransom Payment, attorneys' fees, loss of credit, and other substantial damages to be proven at the time of trial.

56.     In doing the acts described herein, defendant has acted deceitfully, oppressively, and outrageously toward plaintiff with a conscious and constant disregard of plaintiff's rights and with the intent of using defendant's economic and financial power and position to the detriment of plaintiff and with the intention of benefiting defendant financially and of intentionally causing damage and distress to plaintiff.  By virtue of the foregoing, plaintiff is entitled to recover punitive and exemplary damages against defendant, including attorneys' fees.

57.     The plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, plaintiff demands judgment:

1.     On Count I for a declaratory judgment declaring that plaintiff has suffered a covered loss under the 1777 Policy for which defendant is obligated to indemnify plaintiff; and

2.     On Count II for breach of contract for monetary damages in an amount to be proven at trial but in no event less than $1 million; and

3.     On Count III for bad faith awarding exemplary and punitive damages in an amount to be fixed at trial including attorneys' fees incurred to compel defendant to provide coverage; and

4.     The costs of this action; and

5.     For such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           April 16, 2008

                              Yours, etc.

                              ROBINSON BROG LEINWAND GREENE
                                GENOVESE & GLUCK P.C.

                              By: _____
                                  Erach F. Screwvala
                              1345 Avenue of the Americas
                              New York, New York 10105-0143
                              (212) 603-6300

                              Attorneys for Plaintiff

13

EXHIBIT A

# **AIG** AMERICAN INTERNATIONAL COMPANIES ®

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**
**(A CAPITAL STOCK COMPANY)**
2704 Commerce Drive, Suite B, Harrisburg PA 17110

### CRISIS COVERAGE INSURANCE POLICY

**Policy Number: 647-1777**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words you and your refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words we, us and our refer to the company providing this insurance

Other words and phrases that appear in boldface have special meanings.    Refer to **SECTION II. DEFINITIONS.**

In consideration of the premium paid and in reliance on the warranties and representations made by you in the application, including all written statements and materials furnished to us in conjunction with such application, attached to and made a part of this Policy, you and we agree as follows:

## I.    COVERAGE FOR INSURED EVENTS

We will indemnify you for loss due to the following Insured Events:

**INSURED EVENTS**

A.  KIDNAP AND RANSOM/EXTORTION; CORPORATE AND PERSONAL ASSETS

1.  Kidnapping or alleged kidnapping of an insured person(s); or

2.  Personal extortion upon the insured person(s); or

3.  Property damage extortion upon the insured person(s).

B.  WRONGFUL DETENTION

The wrongful detention of an insured person(s).

C.  HIJACKING

The hijacking of any aircraft, motor vehicle or waterborne vessel on which an insured person(s) is traveling.

## II.    DEFINITIONS

A.  Advisory means a formal recommendation of the appropriate authorities that the insured person(s) specifically leave a host country or generally that a class of person(s) which includes an insured person(s) leave the host country.

B.  Appropriate authorities means the United States Department of State; the Foreign Office of the United Kingdom; the Foreign Office of Canada or similar authority of your country of residence.

82376 (09/05)                                                                                                          Page  1 of 11
WS2006

C. **Bodily injury** means bodily injury, sickness or disease sustained by an insured person, including death resulting from any of these at any time.

D. **Business Interruption loss** means your loss of earnings, but not exceeding the actual reduction in earnings, less charges and expenses which do not necessarily continue during the interruption of business, resulting from necessary interruption of business caused directly and solely by an Insured Event(s).

E. **Death or dismemberment** means the death or permanent total physical disablement of an insured person(s) including but not limited to paralysis or loss, or loss of use of any body part.

F. **Earnings** means net profit plus payroll expense, taxes, interest, rents and all other operating expenses earned and incurred by you.

G. **Employee** means any salaried personnel in your employ. Employee(s) does not include independent contractors, leased or temporary employees, volunteers or students.

H. **Extortion** means personal extortion or property damage extortion.

I. **Guest(s)** means any person visiting the premises, or traveling in a motor vehicle, aircraft or watercraft with any director, officer or employee of yours who is listed in Item VI. of the Declarations, for social or business purposes.

J. **Hijacking** means the illegal holding under duress, for a period in excess of six hours, of an insured person(s) while traveling on any aircraft, motor vehicle or waterborne vessel.

K. **Informant** means any person, other than an insured person(s), providing information not otherwise obtainable, solely in return for a reward offered by you.

L. **Insured person(s)** means the insured listed in Item I. of the Declarations, or an employee of the insured who is listed in Item I. of the Declarations, or any guest(s) of the insured or insured person(s) listed in Item I. or Item VI. of the Declarations, or a relative listed in Item VI. of the Declarations; or a resident in the household of the insured listed in Item I of the Declarations.

M. **Kidnapping** means any event or connected series of events of seizing, detaining or carrying away by force or fraud, of one or more insured person(s), (except a minor by the parent(s) thereof) by person(s) for the purpose of demanding Ransom Monies.

N. **Loss** includes the following reasonable and necessary expenses or costs incurred by you directly and solely as the result of an Insured Event:

1. **RANSOM MONIES**

    Ransom Monies paid by you resulting directly from a kidnapping or extortion occurring during the Policy Period.

    Ransom Monies means any monies which you or insured person(s) has paid or lost under circumstances described in Insured Event A. The term monies as used herein includes cash, monetary instruments, bullion, or the fair market value of any securities, property, or services.

2. **IN-TRANSIT/DELIVERY**

    In-Transit/Delivery means loss due to destruction, disappearance, confiscation or wrongful appropriation of Ransom Monies while being delivered to person(s) demanding the Ransom Monies by anyone who is authorized by you or other insured person(s) to have custody thereof; provided, however, that the kidnapping or extortion which gave rise to the delivery is insured hereunder.

INSURED'S COPY

3. **EXPENSES**

Expenses means any reasonable and necessary expenses incurred and paid by you or insured person(s) solely and directly as a result of a kidnapping, extortion, wrongful detention, or hijacking provided that such kidnapping, extortion, wrongful detention or hijack is insured hereunder, including but not limited to:

a.   the amount paid by you or other insured person(s) as reward to an informant for information relevant to any Insured Event; and

b.   interest costs for a loan from a financial institution made to you or other insured person(s) for the purpose of paying Ransom Monies; and

c.   reasonable costs of travel and accommodations will be covered as follows:

i.   costs incurred by you or other insured person(s) while attempting to negotiate an incident covered under Insured Events A, B, and C; and

ii.   travel costs of a kidnapping, wrongful detention or hijacking victim to join their immediate family upon their release, and the travel costs of an employee to replace the kidnapping, wrongful detention or hijack victim; and

iii.   travel costs to evacuate, or hotel costs of, an insured person(s) and/or relative living in the same household as the insured person(s) who is the victim of a kidnapping or extortion threat covered under this Policy; and

d.   salary, which means the following:

i.   the amount of compensation paid by you to the insured person(s) at an annual rate including but not limited to the average bonuses, commissions, cost of living adjustments or foreign tax reimbursements the insured person(s) would normally receive, including contributions to pension and benefit programs (at the level in effect on the date of the kidnapping, wrongful detention, or hijacking) which you continue to pay to or on behalf of the insured person(s) for the duration of the kidnapping, wrongful detention, or hijacking of the insured person(s).

Such compensation will be paid until the earliest of the following:

a)   up to thirty (30) days after the release of the insured person(s) from a kidnapping, wrongful detention or hijacking if the insured person(s) has not yet returned to work; or

b)   discovery of the death of the insured person(s); or

c)   one hundred and twenty (120) days after we receive the last credible evidence that the insured person(s) is still alive; or

d)   sixty (60) months after the date of the kidnapping, wrongful detention or hijacking; and

ii.   the amount of compensation paid by you at an annual rate, of an individual newly hired to conduct the specific duties of the insured person(s) while he/she is held by the kidnappers or wrongfully detained, and will continue only until the earliest of the conditions set forth in Expenses, d., salary, i, a) -d) above are satisfied; and

iii.   the amount of compensation normally received by a relative of a kidnapping, wrongful detention, or hijacking victim, and paid by you, who leaves their employment in order to

assist in the negotiations for the release of the victim. Coverage under this section will continue only until the earliest of the conditions set forth in **Expenses, d., salary, i, a) -d)** above are satisfied; and

e.   medical services and hospitalization costs incurred by an insured person(s) and paid by you as the result of an incident covered under Insured Events A, B, or C, within thirty six (36) months either following the release of the victim(s) or the last credible extortion threat occurring during the policy period, including but not limited to any costs for treatment by a neurologist or psychiatrist, costs for cosmetic surgery, and expense of confinement for such treatment. Coverage under this paragraph is also extended to any other person(s) involved in the handling or negotiating of a **kidnapping, wrongful detention, extortion, or hijacking** and/or the handling of Ransom Monies; and

f.   fees and expenses of independent forensic analysts engaged by you; and

g.   personal financial loss suffered by an insured person(s) solely and directly as the result of the physical inability of such person(s) to attend to personal financial matters while a **kidnapping, wrongful detention or hijacking** victim. Coverage will include but not be limited to loss(es) which result from such person's failure to renew insurance contracts, failure to exercise stock options, failure to respond to margin or loan calls by financial institutions and failure to pay off personal loans or a mortgage. Claims will be payable to you where applicable; and

h.   Recall expenses which are incurred by you solely as a result of a threat or connected series of threats, for the purpose of demanding Ransom Monies, made directly against you to commit a product tampering;

The maximum Limit of Insurance for all recall expenses will not exceed the amount set forth in Item II. C of the Declarations, or $5,000,000, whichever is less; and

i.   **Business interruption loss** suffered by you resulting from the necessary interruption of business caused directly and solely by a **kidnapping, extortion, wrongful detention or hijacking**, or an extortion threat to physically damage any real or tangible property bordering **your** premises which necessarily results in an interruption of **your** business.

The maximum Limit of Insurance for all **business interruption loss** will not exceed the amount set forth in Item II. C of the Declarations or $5,000,000, whichever is less. The waiting period for all business interruption loss will be six hours; and

j.   rest and rehabilitation expenses including travel, lodging, meals and recreation of the **kidnapping, wrongful detention or hijacking** victim and a spouse and/or children; and

k.   reasonable and necessary fees and expenses of a qualified interpreter assisting you or other insured person(s) in the event of an incident covered under Insured Events A, B, or C,; and

l.   increased costs of security due to kidnapping, extortion threats, or hijacking including but not limited to hiring of security guards, hiring of armored vehicles and overtime pay to existing security staff, for a period of up to ninety (90) days, provided however that our approved Kidnap/Ransom and Extortion consultant, or other independent security consultants, has specifically recommended such security measures; and

m.   job retraining costs for the kidnapping, wrongful detention, or hijacking victim, including but not limited to salary of the kidnap, wrongful detention or hijack victim while being retrained, and costs of external training courses.

INSURED'S COPY

4. **CONSULTANTS EXPENSE**

   Consultant Expenses means:

   a. Reasonable fees and expenses of our approved Kidnap/Ransom and Extortion consultant, or other independent security consultants, provided we have given our prior consent to the use of such other independent security consultants to act on your behalf; and

   b. Reasonable fees and expenses of our approved public relations consultant, or other public relations consultants, provided we have given our prior consent to the use of such other public relations consultants to act on your behalf.

5. **DEATH OR DISMEMBERMENT**

   Death or Dismemberment means:

   a. The Death or Dismemberment sustained by an insured person(s) during a kidnapping, wrongful detention, extortion, or hijacking and any other insured person(s) involved in the handling or negotiation of the kidnapping, wrongful detention, extortion, or hijacking incident.

   b. The amounts listed in Item II. F of the Declarations will be the total Limit of Insurance for all Death and Dismemberment benefits arising out of bodily injury sustained by the insured person(s) during any one Insured Event.

   c. We will have the right and opportunity to examine the person of any individual whose bodily injury is the basis of the claim when and as often as we may reasonably require during the pendency of a claim hereunder and to make an autopsy, in case of death, where it is not forbidden by law. This will be done at our own expense.

   d. All claims under this section will be payable to you upon receipt and acceptance by us of Statement of Loss. Statement of Loss may include a death certificate, coroner's report, police report, or other evidence of the Death or Dismemberment of the insured person(s), that we deem sufficient.

6. **JUDGMENTS, SETTLEMENTS AND DEFENSE COSTS**

   Judgements, Settlements And Defense Costs means:

   a. Judgments, settlements and defense costs that are incurred with our consent, as a result of any claim or suit brought by or on behalf of an insured person(s) (or the heirs, estate, or legal representatives of an insured person(s)) against you solely and directly as a result of a kidnapping, extortion, or wrongful detention provided such suit or claim is brought within twelve (12) months of the release or death of a kidnapped, or wrongfully detained insured person(s), or the last credible extortion threat occurring during the policy period, but in no event longer than sixty (60) months after the kidnapping, extortion, or wrongful detention. As additional conditions precedent to our liability, you will:

      i. immediately notify us of any such claim or suit; and

      ii. not admit liability in any such claim or suit; and

      iii. cooperate with us in conducting the defense of any such claim or suit.

   b. We will have the right to investigate, negotiate or settle any such claim or suit or to take over the conduct of the defense thereof, and you will cooperate with us to these ends.

INSURED'S COPY

O. **Personal extortion** means any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to:

    1. kill, physically injure or kidnap an insured person(s), provided that Ransom Monies are not in the possession of an insured person(s) at the time of the threat; and/or

    2. divulge any confidential, private or secret information unique to the insured person(s):

P. **Policy period** means the period stated in Item IV. of the Declarations.

Q. **Premises** means that portion of any building occupied by you as a place to conduct business or a residence occupied by any of your directors, officers or employees who are listed in Item VI. of the Declarations.

R. **Product tampering** means any actual or threatened, intentional, malicious and wrongful alteration or contamination of any goods or products manufactured, handled or distributed by you.

S. **Property damage extortion** means any threat or connected series of threats for the purpose of demanding Ransom Monies communicated to you or other insured person(s) to:

    1. damage physically or pollute any premises or other real or personal property owned by you, leased by you, or for which you are legally liable, including fixtures, livestock, fine art; machinery, equipment or electronic data (by the introduction of a computer virus or threat thereof); and/or

    2. commit a product tampering; and/or

    3. reveal a trade secret or other proprietary information of yours.

T. **Proprietary information** means any confidential, private or secret information unique to you or your business.

U. **Recall expense** means reasonable and necessary costs incurred by you to inspect, withdraw and destroy your product(s), including, but not limited to:

    1. the cost of newspaper, magazine, radio and television announcements necessary to effect the recall of your product(s); and

    2. the cost of correspondence and transportation necessary to effect the recall of your product(s); and

    3. the cost to you to hire additional person(s), other than your regular employees, necessary to effect the recall of your product(s); and

    4. remuneration paid to your regular employees for overtime devoted exclusively to the purpose of recalling your products; and

    5. the out of pocket expenses of personnel under paragraphs 3. and 4. above, including transportation, incurred exclusively for the purpose of recalling your products; and

    6. any other expenses approved by us, necessary to effect the recall of your product(s).

V. **Relative** means a spouse, child, stepchild, legally adopted child, foster child, spouse of a married child, grandchild, sister, brother, parent, parent-in-law, grandparent, or grandparent-in-law, adoptive parent, step-parent and siblings or living ancestors or descendants of any insured person(s) listed in Item VI. of the Declarations.

X. **Trade secret** means a secret process, formula, tool, mechanism, or compound known to you, but not patented, which is used directly to produce some article of trade having a commercial value.

INSURED'S COPY

Y. **Wrongful detention** means the arbitrary or capricious act of involuntary confinement of an **insured person(s)** by others who are acting as agent(s) of or with the tacit approval of any government or governmental entity, or acting or purporting to act on behalf of any insurgent party, organization or group. A connected series of **wrongful detentions** will be considered one **wrongful detention**.

## III. EXCLUSIONS

The Policy does not apply to any loss arising out of, based upon, attributable to or involving, directly or indirectly any of the following:

A. the fraudulent, dishonest, or criminal acts of **insured person(s)**, or any person authorized by the you to have custody of **Ransom Monies**. This exclusion will not apply to the payment of **Ransom Monies** by an **insured person(s)** in a situation where local authorities have declared such payment illegal; or

B. monies or property surrendered away from the premises in any face to face encounter involving the use or threat of force or violence unless surrendered by a person in possession of such monies at the time of such surrender for the sole purpose of conveying it to pay an **extortion** or demand for **Ransom Monies** previously communicated to an **insured person(s)**; or

C. monies or property surrendered on the premises unless brought onto the premises after receipt of the **extortion** or demand for **Ransom Monies** for the purpose of paying such demand; or

D. As respects **wrongful detention** only:

1. any actual or alleged violation of the laws of the host country by **insured person(s)**, or failure of an **insured person(s)** to maintain and possess duly authorized and issued required documents and visas, unless we determine that such allegations were intentionally false, fraudulent, and malicious and made solely to achieve a political, propaganda, or coercive effect upon or at the expense of the **insured person(s)**; or

2. failure of an **insured person(s)** to evacuate from the host country within ten (10) days after issuance of an advisory by the appropriate authorities; or

3. travel to country(ies) after an advisory has been issued; or

4. any **insured person(s)** who is an active member of any governmental organization, official law enforcement, or military force.

You agree to reimburse us for any payments we made which are ultimately determined not to be covered because of the application of this exclusion.

E. As respects **recall expense** only:

1. any recall expenses where your use of flawed or substandard materials or components in its manufacturing process or the manufacturing process itself would, without any **extortion** threat, have necessitated product recall and/or destruction; and

2. any reduction in revenue or profits; and

3. refunds for, the reduction in value of, or the cost of replacing any withdrawn, recalled, substandard or destroyed goods.

## IV. LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the provisions of this section fix the most we will reimburse you for, regardless of the number of:

1. Insureds persons(s);

   2. Claims made or suits brought; or

   3. Persons or organizations making claims or bringing suits.

**B. Ransom Monies**

   1. The **Ransom Monies** annual aggregate limit stated in Item II. A of the Declarations is the most **we** will reimburse you for all **loss** covered under **Ransom Monies.**

   2. Subject to B.1. above, the **Ransom Monies** limit for each **loss** stated in Item II. A of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**C. In-transit/Delivery**

   1. The **In-transit/Delivery** annual aggregate limit stated in Item II. B of the Declarations is the most **we** will reimburse you for all **loss** covered under **In-transit/Delivery.**

   2. Subject to C.1. above, the **In-transit/Delivery** limit for each **loss** stated in Item II. B of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**D. Expenses**

   1. The **Expenses** annual aggregate limit stated in Item II. C of the Declarations is the most **we** will reimburse you for all **loss** covered under **Expenses.**

   2. Subject to D.1. above, the **Expenses** limit for each **loss** stated in Item II. C of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**E. Consultants Expense**

   1. The **Consultants Expense** annual aggregate limit stated in Item II. D of the Declarations is the most **we** will reimburse you for all **loss** covered under **Consultants Expense.**

   2. Subject to E.1. above, the **Consultants Expense** limit for each **loss** stated in Item II. D of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**F. Judgements, Settlements, and Defense Costs**

   1. The **Judgements, Settlements, and Defense Costs** annual aggregate limit stated in Item II. E of the Declarations is the most we will reimburse you for all **loss** covered under **Judgements, Settlements, and Defense Costs.**

   2. Subject to F. 1. above, the **Judgements, Settlements, and Defense Costs** limit for each **loss** stated in Item II. E of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**G. Death or Dismemberment**

   1. The **Death or Dismemberment** each incident limit stated in Item II. F of the Declarations is the most we will reimburse you for all **loss** covered under **Death or Dismemberment.**

   2. Subject to G.1. above, the **Death or Dismemberment** limit for each person stated in Item II. F of the Declarations is the most we will reimburse you for **loss** resulting from any one **Insured Event.**

**H. Deductible**

The **Deductible** stated in Item III. of the Declarations will apply separately to each **loss.** The **Deductible** shall be borne by you and remain uninsured.

INSURED'S COPY

I.  All loss resulting from an Insured Event and arising from the same, continuous, related, or repeated conditions or incidents will be treated as arising out of one Insured Event.

J.  Consultants costs are expenses or costs incurred after an Insured Event first became known to you.

## V.  CONDITIONS PRECEDENT TO LIABILITY

A.  As a condition precedent to our liability under Insured Event A, you will have approved the payment of Ransom Monies.

B.  In the event of a kidnapping, extortion, wrongful detention, or hijacking of an insured person(s) during the policy period, and in the case of a kidnapping or extortion, prior to the payment of Ransom Monies, you will make every reasonable effort to:

1.  determine that the kidnapping, extortion, wrongful detention, or hijacking has actually occurred; and

2.  give immediate oral and written notice to us with periodic and timely updates concurrent with activity occurring during the incident; and

3.  if it appears to be in the best interest of an insured person(s), notify the national or other appropriate law enforcement agency having jurisdiction over the matter.

## VI. GENERAL CONDITIONS

A.  TERRITORY: This policy applies to incidents anywhere in the world.

B.  CONFIDENTIALITY: Insured person(s) will use all reasonable efforts not to disclose the existence of this Policy. This condition will also apply to any excess insurance or other insurance.

C.  CANCELLATION: This Policy may be cancelled by you by surrender of this Policy to us or by giving us ten (10) days advance written notice, stating when thereafter such cancellation will be effective. This Policy may be cancelled by us by delivering to you or by mailing to you by registered, certified or other first class mail, at your address stated in Item I. of the Declarations, written notice stating when, not less than ninety (90) days thereafter, the cancellation will be effective except in the case of cancellation for nonpayment of premium by you, in which case we will provide at least ten (10) days written notice. The mailing of such notice as aforesaid will be sufficient proof of notice and this Policy will terminate at the date and hour specified in such notice.

If this Policy is canceled by you, we will retain the short rate portion of the premium hereon. If this Policy is canceled by us, we will retain the pro-rata portion of the premium hereon. Payment or tender of any unearned premium by us will not be a condition precedent to the effectiveness of cancellation, but such payment will be made as soon as practicable.

D.  DUE DILIGENCE: Insured person(s) will use due diligence and do, and concur in doing, all things reasonably practicable to avoid or diminish any loss(es) insured under this Policy.

E.  OTHER INSURANCE: The insurance provided under this Policy will be excess over any other valid and collectible bond or insurance, with the exception of loss(es) for Death or Dismemberment, which will be primary.

If the insured has other insurance against a loss covered by this Policy, we shall not be liable under this Policy for a greater proportion of such loss and claims expenses than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of insurance of all valid and collectible insurance against such loss. If the insured has other insurance provided by an American International Group, Inc. member company against a loss covered by this Policy, the maximum Limit of Insurance under all policies will not exceed the highest applicable Limit of Insurance available under any one Policy.

INSURED'S COPY

F. EXCESS INSURANCE: You may purchase excess insurance over the Limits of Insurance set forth in this Policy without prejudice to this Policy, provided that we are notified in writing of the details of such other insurance at the time such other insurance is acquired. The existence of such insurance, if any, will not reduce our liability under this Policy.

G. NON-ACCUMULATION OF LIABILITY: Regardless of the number of years this Policy continues in force, and of the number of premiums payable or paid or of any other circumstances whatsoever, liability under this Policy with respect to any loss(es) will not be cumulative from year to year or policy period to policy period. When there is more than one Named Insured shown in the Declarations, our aggregate Limit of Insurance for loss(es) sustained by any or all of them will not exceed the amount for which we would be liable if all loss(es) were sustained by any one of them.

H. STATEMENT OF LOSS: You will file a detailed, sworn Statement of Loss with us as soon as practicable after the date of loss.

I. NON-EMPLOYEE DIRECTORS: In the event that any of your director(s), who is not an employee thereof, is an insured person(s) under any other similar Policy or Policies issued by us or our affiliates and a loss as respects such director is reported under this Policy and one or more such other Policies, then the aggregate liability for us and our affiliates(s) for each loss will not be cumulative and will in no event exceed the highest Limits of Insurance applicable to each loss under any one such policy.

J. NON-ASSIGNMENT: This Policy will not be assigned or transferred without our written consent.

K. AUTHORIZATION: By acceptance of this Policy, the Named Insured listed in Item I. of the Declarations agrees to act on behalf of any of its subsidiaries with respect to the giving and receiving of any return premiums that may become due under this Policy, the acceptance of endorsements, and the giving or receiving of any other notice provided for in this Policy; and these subsidiaries agree that such Named Insured will act on their behalf.

L. CONSOLIDATION-MERGER: If, through either (1) consolidation or merger with, (2) acquisition of the majority stock ownership of, or (3) acquisition of the assets of, some other entity, exposures are created which are covered by this Policy and not originally part of you based on the original description at the time of Policy issuance, you will give us written notice ofconsolidation, merger, or acquisition within ninety (90) days of such consolidation, merger or acquisition and upon our acceptance of such additional exposure, will pay us an additional premium computed from the date of the consolidation, merger or acquisition to the end of the current premium period.

M. APPRAISAL: If you and we fail to agree as to the amount of loss, each will, on the written demand of either, made within sixty (60) days after our rejection of a Statement of Loss submitted by you, select a competent and disinterested appraiser. The appraisers will appraise the loss stating the amount of loss. If the appraisers fail to agree they will select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of you or us, such umpire will be selected by a judge of any competent court in the United States, and the appraisers will submit their differences to the umpire. An award inwriting of any two will determine the amount of loss. You and we will each pay its chosen appraiser and will bear equally the other expenses of the appraisal and umpire. We will not be held to have waived any of its rights by any act relating to appraisal.

N. ASSISTANCE AND COOPERATION: Insured person(s) will cooperate with us in all matters relating to this insurance. This may include attending hearings and trials, securing and giving evidence, obtaining the attendance of witnesses, assisting in effecting settlements, and in conducting litigation, arbitration, or other proceedings.

O. INSPECTION AND AUDIT: We may examine and audit your business documents, relating to the subject matter of this insurance, until three (3) years after this Policy has expired or has been cancelled. Any premium due for exposures which exist but were not reported to us will be determined by audit.

INSURED'S COPY

P. SUBROGATION: In the event of any payment under this Policy, we will be subrogated to an Insured person's rights of recovery. In such case the Insured person(s) will execute all documents required and will do everything necessary to secure and preserve such right including the execution of such documents necessary to enable us to bring suit in the your name.

Q. RECOVERIES: In the event of any payment under this Policy, all recoveries, less the actual cost to us of recovery, will be distributed firstly to us for all amounts paid by us under this Policy and any remainder will be paid to you.

R. ACTION AGAINST US: No suit, action or proceeding for recovery of any loss under this Policy will be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy are complied with and the same be commenced within twelve (12) months next after a Statement of Loss has been filed with us by you.

S. VIOLATIONS OF APPLICABLE LAW: Notwithstanding the "TERRITORY" provision or anything else to the contrary no matter where located, if coverage for a claim under this policy is in violation of any applicable economic, trade or other sanction or law, including without limitation any sanction administered or enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim shall be null and void.

T. CHOICE OF LAW AND FORUM: The construction, validity and performance of this Policy will be governed by the laws of the U.S.A. and the State of New York. We and you hereby expressly agree that all claims and disputes will be brought for adjudication either in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

U. CONCEALMENT, MISREPRESENTATION, OR FRAUD: This Policy is null and void in case of fraud, concealment, or misrepresentation by an insured person(s) of a material fact concerning:

1. this insurance or the procurement thereof; or

2. an insured person(s); or

3. your interest in the insured person(s); or

4. any loss or claim presented to us under this Policy.

V. CHANGES: Notice to any representative of ours or knowledge possessed by any representative or by any person will not effect a waiver or a change in any part of the Policy or estopel us from asserting any right under the terms of this Policy, nor will the terms of this Policy be waived or changed, unless agreed to in writing by us.

W. NOTICES: Except as indicated to the contrary herein, all notices, applications, demands and requests provided for in this Policy will be in writing and will be given to or made upon either party at its address shown in the Declarations.

X. TITLES OF PARAGRAPHS: Titles of paragraphs are inserted solely for convenience of reference and will not be deemed to limit, expand or otherwise effect the provisions to which they relate.

By signing below, our President and the Secretary agree on our behalf to all the terms of this Policy.

_Elizabeth M. Tuck_
_____
Secretary

_(signature)_
_____
President

This Policy shall not be valid unless signed at the time of issuance by our authorized representative on the Declarations page of the Policy.

82376 (09/05)                                                                                              Page 11 of 11
WS2006

# FORMS SCHEDULE

**NAMED INSURED:**    JESUS HOMERO SILVA SALAZAR

**POLICY NO:**    647-1777                        **EFFECTIVE DATE:**    September 30, 2006

| END'T NO. | FORM NAME | FORM NUMBER | EDITION DATE |
|---|---|---|---|
| | Crisis Coverage Ins – Dec | 82375 | ( 09/05 ) |
| | Crisis Coverage Ins - Policy | 82376 | ( 09/05 ) |
| | Form Schedule | 80048 | ( 05/02 ) |
| 1 | Named Insured / Insured Person Schedule | 82570 | ( 12/03 ) |
| 2 | TX Cancellation / Nonrenewal | 68731 | ( 09/97 ) |
| 3 | Texas Amendatory Endorsement | 90076 | ( 11/05 ) |

80048 (5/02)

INSURED'S COPY

ENDORSEMENT No. 1

This endorsement, effective 12:01 AM:  September 30, 2006

Forms a part of policy no.:  647-1777

Issued to:  JESUS HOMERO SILVA SALAZAR

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NAMED INSURED/INSURED PERSON SCHEDULE

This endorsement modifies insurance provided under the following:

CORPORATE KIDNAP AND RANSOM/EXTORTION INSURANCE POLICY
CRISIS COVERAGE INSURANCE POLICY

1.  Item 1. of the Declarations is amended to include the following as Named Insured:

2.  Item VI. of the Declarations is amended to include the following as Insured Person(s):
   JESUS HOMERO SILVA SALAZAR
   IRMA ALICIA MORALES DE SILVA
   JESUS HOMERO SILVA MORALES
   DAVID DE JESUS SILVA MORALES

82570 (12/03)                                                    Page 1 of 2
WS2025

INSURED'S COPY

All other terms, conditions, and exclusions of this Policy shall remain unchanged.

INSCORP, INC.
BY

_____          _____
        Authorized Representative                     Countersignature (where applicable by law)

82570 (12/03)
WS2025

INSURED'S COPY

This endorsement, effective 12:01 AM:  September 30, 2006

Forms a part of policy no.:  647-1777

Issued to:  JESUS HOMERO SILVA SALAZAR

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## TEXAS CANCELLATION AND NONRENEWAL
## AMENDATORY ENDORSEMENT
## FOR NON-LIABILITY

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name Corporation, Named Organization, Named Sponsor, or Named Insured stated in the declarations page.

The cancellation provision of this policy is deleted in its entirety and replaced by the following:

CANCELLATION AND NONRENEWAL

A.     Cancellation

1.     This policy may be canceled by the Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.

2.     Except as provided by subsection A.3. below, the Insurer may not cancel this policy after the 60th day following the date on which the policy was issued, or if it is a renewal or continuation of a policy issued by the Insurer.

3.     The Insurer may cancel this policy at any time during the term of the policy for the following reasons:

   a)     fraud in obtaining coverage;

   b)     failure to pay premiums when due;

   c)     an increase in hazard within the control of the Insured which would produce an increase in rate;

   d)     loss of the Insurer's reinsurance covering all or part of the risk covered by the policy; or

   e)     an Insurer being placed in supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.

4.     The Insurer shall deliver or mail to the Insured first named in the Declarations written notice of cancellation at the address shown on the policy not less than the 10th day before the date on which the cancellation takes effect.  Such written notice shall state the reason(s) for cancellation.

68731 (9/97)                                                                          Page 1 of 2
WS3041

5.  If this policy covers a condominium association, and the condominium Property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured thirty (30) days before the effective date of cancellation. The Insurer will also provide thirty (30) days written notice to each unit-owner to whom the Insurer issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to the Insurer.

6.  The Insurer may not cancel this policy based solely on the fact that the Insured is an elected official.

B.  Nonrenewal

1.  The Insurer may refuse to renew this policy by delivering or mailing to the Insured first named in the Declarations written notice of nonrenewal at the address shown on the policy. Such written notice shall state the reason(s) for nonrenewal. The notice must be delivered or mailed not later than the 60th day before the date on which the policy expires. If the notice is delivered or mailed later than the 60th day before the date on which the policy expires, the coverage shall remain in effect until the 61st day after the date on which the notice is delivered or mailed. Earned premium for any period of coverage that extends beyond the expiration date of the policy shall be computed pro rata based on the previous year's rates.

2.  If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the Insurer will mail or deliver written notice of nonrenewal, at least thirty (30) days before the expiration or anniversary date of the policy, to:

a.  The first Named Insured; and

b.  Each unit-owner to whom the Insurer issued a certificate or memorandum of insurance.

The Insurer will mail or deliver such notice to each last mailing address known to the Insurer.

3.  The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

4.  The Insurer may not refuse to renew this policy based solely on the fact that the Insured is an elected official.

All other terms and conditions remain unchanged.

INSCORP, INC.
BY

_____          _____
      Authorized Representative                 Countersignature (where applicable by law)

ENDORSEMENT No. 3

This endorsement, effective 12:01 A.M.: September 30, 2006

Forms a part of Policy No. 647-1777

Issued to:  JESUS HOMERO SILVA SALAZAR

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## TEXAS AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**CORPORATE KIDNAP AND RANSOM/EXTORTION INSURANCE POLICY
CRISIS COVERAGE INSURANCE POLICY**

**Section VI. GENERAL CONDITIONS**, is amended to include the following additional condition:

CLAIMS HANDLING:
1. Within 15 days after we receive written notice of claim, we will:
   a. Acknowledge receipt of the claim.  If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;
   b. Begin any investigation of the claim; and
   c. Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms.  We may request more information at a later date, if during the investigation of the claim such additional information is necessary.
2. We will notify you in writing as to whether:
   a. The claim or part of the claim will be paid;
   b. The claim or part of the claim has been denied, and inform you of the reasons for denial;
   c. More information is necessary; or
   d. We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.
3. We will provide notification, as described in 2.a through 2.d above, within 15 business days after we receive the signed, sworn proof of loss and all information we requested. If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.
4. We will pay for covered loss or damage within 5 business days after we have notified you that payment of the claim or part of the claim will be made on the amount of loss.

All other terms, conditions, and exclusions of this Policy shall remain unchanged.

INSCORP, INC.
BY

_____
Authorized Representative

Countersignature (where applicable by law)

90076 (11/05)

Page 1 of 1

INSURED'S COPY

**AIG** AMERICAN INTERNATIONAL COMPANIES ®

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**
**(A CAPITAL STOCK COMPANY)**
2704 Commerce Drive, Suite B, Harrisburg PA 17110

THIS IS A U.S. DOLLAR POLICY

CRISIS COVERAGE INSURANCE

DECLARATIONS

Policy Number: 647-1777

Renewal of:    6471553

Item I.  Named Insured & Mailing Address:

JESUS HOMERO SILVA SALAZAR
6405 CONRAD DR.
LAREDO, TX 78041

Item II.  Limits of Insurance

| | | | | |
|---|---|---|---|---|
| **A.** | Covered Loss A:<br>$ 1,000,000 | each loss; | Ransom Monies:<br>$ 1,000,000 | each annual aggregate |
| **B.** | Covered Loss B:<br>$ 1,000,000 | each loss; | In-transit/Delivery:<br>$ 1,000,000 | each annual aggregate |
| **C.** | Covered Loss C:<br>$ 1,000,000 | each loss; | Expenses:<br>$ 1,000,000 | each annual aggregate |
| **D.** | Covered Loss D:<br>$ Unlimited | each loss; | Consultant Expenses:<br>$ Unlimited | each annual aggregate |
| **E.** | Covered Loss E:<br>$ 1,000,000 | each loss; | Judgements, Settlements, and Defense Costs:<br>$ 1,000,000 | each annual aggregate |
| **F.** | Covered Loss F:<br>$ 250,000 | each person; | Death or Dismemberment:<br>$ 1,000,000 | each incident |

Item III.  Deductible:  $NIL each loss under Coverage for Insured Events A only.

Item IV.  Policy Period:  From:  September 30, 2006  To:  September 30, 2007
(12:0l A.M. Standard Time at address stated in Item I above)

Item V.  Premium:    [X] Annual        [ ] Three Year Prepaid

82375 (09/05)
WS2005

Page  1 of  2

INSURED'S COPY

| | |
|---|---|
| Policy Premium: | $6,983.00 |
| Terrorism Risk Insurance Act | $71.00 |
| ___ Surcharge | $N/A |
| Total Amount Due | $7,054.00 |

Item VI: Insured Person(s):

See Named Insured/Insured Person Schedule Endorsement #1

Item VII: Endorsements attached at issuance: See Attached Forms Schedule - Form # 80048 (05/02)

Broker: FLOYD WEST & COMPANY

Address: 2301 EAST LAMAR BLVD.
5TH FLOOR
ARLINGTON, TX 76006

_____
Authorized Representative

INSCORE, INC.
BY _____
Countersignature (where applicable by law)

82375 (09/05)
WS2005

Page 2 of 2

INSURED'S COPY